Argued October 16; remanded with directions to modify
November 26, 1935

## SCHISKA *v.* SCHRAMM ET AL.

(51 P. (2d) 668)

*Borden Wood,* of Portland (McCamant, Thompson & King, of Portland, on the brief), for appellant.

*Harris, Smith & Bryson,* of Eugene, for respondent Grace Schiska.

*W. W. Calkins* and *Charles A. Hardy,* both of Eugene (Calkins & Calkins, of Eugene, on the brief), for other respondents.

KELLY, J. In 1927, in order to secure the deposit of funds belonging to Lane county, the Commercial State Bank of Springfield pledged certain assets and in 1928, as principal, executed a bond with defendant, New Amsterdam Casualty Company, as surety, in the penal sum of $5,000. Of the pledged assets, above mentioned, defendant, J. A. Cox, owned the refunding bonds Nos. 48 to 57 of the town of Springfield inclusive, of the par value of $5,000, and the bank owned the refunding bonds of said town, Nos. 1 to 40 inclusive, of the par value of $500, each with interest coupons, United States Fourth Liberty Loan Bonds of the par value of

$1,500, with interest coupons aggregating $31.81; United States First Liberty Bonds of the par value of $500, with interest coupons in the sum of $10.63; Guaranty Trust Company bonds of the par value of $371.37, with interest coupons aggregating $10.80; Guaranty Trust Company preferred stock of the par value of $5,950 and Interim Certificate, for $7,500 in amount, of Bonds Selknik Power Company.

On December 4, 1931, the defendant, New Amsterdam Casualty Company, paid to plaintiff, as county treasurer, $4,000.

Since this case was filed, the plaintiff has received dividends from the bank and proceeds from the pledged securities, which, together with those in her hands, when the case was instituted, amount to enough to pay the claim of Mr. Cox and that of the New Amsterdam Casualty Company in full.

The New Amsterdam Casualty Company is the only appellant herein and for brevity will be referred to as appellant. For the same reason the nonappealing defendants will be referred to as defendants. Appellant contends that upon its payment of said $4,000, under said bond, appellant at once became subrogated pro tanto to the rights of the county treasurer in and to the bank's collateral in her hands and in, to and under the claim filed by her with the superintendent of banks.

The defendants contend that while the right of subrogation existed when the bond was executed upon which appellant is surety, that right was abrogated by section 22-806, Oregon Code 1930.

The defendants also contend that the right of subrogation on the part of the surety is dependent upon the contract to the extent that it grows out of conditions resulting from the due observance of the contract, and

it must not be inconsistent with the terms of the contract; that the surety bond required appellant to pay $5,000 to the plaintiff on demand when the bank closed; and that, because the surety company paid only $4,000, it has no right of subrogation because there was not a due observance of the contract.

The defendants further contend that the bond of appellant is not a continuing bond as to the bank. In effect, it is argued that the payment of each annual premium constituted the execution of a new undertaking.

■ Whether the bond in suit is a continuing bond or not is decisive of whether section 22-806, Oregon Code 1930, is applicable to it for the reason that that section was enacted in 1929, while, as stated, originally the bond was executed in 1928; and unless it may be deemed to have been reexecuted subsequent to the enactment of the statute, the statute would have no application.

The only condition stated in the bond prerequisite to a determination thereof by the surety was the service of a written notice of the surety's election so to do, whereupon said surety would have been discharged from liability for any default of the principal occurring after the expiration of thirty days from and after the service of such notice.

To give the payment of an annual premium the effect of renewing the bond or reexecuting it or executing a new bond, it would be necessary to hold that the original bond had expired, while in fact, no such expiration occurred because no notice was ever served by said surety. We think that the bond was a continuing bond: *United States Fidelity & Guaranty Company v. Rathbun,* 160 Minn. 176 (199 N. W. 561, 562). The statute of 1929 is not applicable thereto.

■ The right of subrogation arises when a contract of suretyship is executed.

"Subrogation is the substitution of another person in place of the creditor to whose rights he succeeds in relation to the debt, and gives to the substitute all of the rights, priorities, remedies, liens and securities of the party for whom he is substituted. It stands upon the same broad principle of natural justice that makes one surety entitled to contribution from another, and is broad enough to cover every instance in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience, ought to be discharged by the latter." *United States Fidelity & Guaranty Company v. Bramwell,* 108 Or. 261, 277 (217 P. 332, 32 A. L. R. 829).

Both the right of subrogation and the right of contribution were invoked by appellant; but the latter becomes unimportant because the county holds sufficient funds to pay both sureties.

As stated, defendants deny the existence of the right of subrogation because of the provisions of section 22-806, Oregon Code 1930, and because appellant paid only $4,000 when the penal sum of its bond was $5,000. Defendants also deny that apellant is entitled to exact contribution from the proceeds of the bonds belonging to defendant Cox. In support of this position defendants urge that Cox was not a cosurety for the reason that he did not himself put up the bonds as security for the bank but loaned them to the bank, allowing the bank to use the bonds for security.

The record discloses that the bonds belonging to defendant Cox were deposited with the county pursuant to a compliance on his part with a request of the bank contained in a letter from its cashier addressed to defendant Cox reading as follows:

"Dear Mr. Cox:

Lane County is receiving from the Government something over a million Dollars which will be deposited

in the different bank of the County according to the bonds furnished by the different banks, and under the law each bank is requires to furnis either a surety bond or bonds of a City or Municipality, and this bank would like to borrow your bonds that you have here in the bank to deposir with the County Treasurer, to secure a further deposit from the County, and the Bank here will guarantee to return you the bonds, and you will have the privalege of using the coupons that mature just the same, and the Bonds will be deposited in the First National Bank of Eugene subject to our order, if you will let us take those bonds for that purpose we will certainly appreciate it very much, as it will not cause us to secure a Surety bond, and we will see to it that you do not loose by the transaction, thanking you for an early reply, I am,'' etc.

Whether Cox should be treated as cosurety and appellant be granted the right of contribution, or the bonds be treated as collateral security in the hands of plaintiff and appellant be subrogated to the rights of the county therein, the result as far as it affects appellant will be the same.

■ ■ We think that the relationship of cosureties existed between defendant Cox and appellant. We arrive at that conclusion because the letter above quoted, and compliance with its terms on the part of Cox, constitute a contract whereby Cox pledged his property for the performance by the bank of its contract with the county. It is true that defendant Cox was not personally bound; but that is not essential to create the relationship of surety: *Fowler v. Barlow,* 102 Vt. 99 (146 Atl. 77, 78); *Matthews v. Matthews,* 128 Me. 495 (148 Atl. 796, 797); *Smith v. Tostevin,* 247 Fed. 102, 103, 104; *Eberhart v. Eyre-Shoemaker, Inc.,* 78 Ind. App. 658 (134 N. E. 227).

Some law writers treat the property pledged by its owner to answer for the debt or default of another as

occupying the position of a surety: 49 C. J. 897, Subject, Pledge, section 5, and authorities cited in note 40.

The fact that Mr. Cox did not deliver his bonds in person to the county treasurer as security for the compliance by the bank with its contract with the county whereby the county's funds were deposited with said bank, but accepted the office of the bank to that end, does not affect the relationship thereby created. Such a transaction may be effected through the services of an agent as well as by direct personal action.

■ We are unable to subscribe to the suggestion that the failure of appellant to pay the full penal sum of its undertaking deprived it of the rights of subrogation and contribution. It is essential that the debt must first be paid before a surety can have subrogation; but in the case at bar this has occurred.

The right to a preference of a state, by virtue of its sovereignty, is not involved here. The cases cited which deal with that question are not in point.

This is a case where municipal bonds were pledged by a third party to secure the compliance by the bank with its contract to repay funds belonging to the county and which, in consideration of such pledging, were deposited by the county with the bank. The municipal bonds so pledged must be treated as a cosurety with the undertaking of appellant executed to secure the county in the same manner. The property of the bank, which was pledged for the same purpose, became part of the aggregate property and money received and held by the county to reimburse the county for the failure of the bank to meet the provisions and terms of its deposit agreement. The sureties, upon full payment to the county, are entitled to the rights therein which the county would have retained if no independent suretyship had been involved. The depositors in the

bank are not cosureties with appellant and defendant Cox. The right of subrogation is not an implied obligation on the part of the bank in the sense that the surety asserting it becomes merely a general creditor of the bank.

These views lead to a modification of the decree of the circuit court by directing the payment from the funds remaining in the hands of the plaintiff to appellant of the sum of $4,000, together with interest thereon at the rate of six per cent per annum from December 14, 1931.

This cause is remanded to the circuit court with directions to modify said decree in accordance herewith, neither party to recover costs or disbursements.