In re PRO PAGE PARTNERS, LLC, Debtor.

Mary Foil Russell, Trustee, Plaintiff,

v.

Carleton A. Jones III, Defendant.

Bankruptcy No. 00–22856.
Adversary No. 01–2036.

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 19, 2003.

Mark S. Dessauer, Esq., Hunter, Smith & Davis, LLP, Kingsport, TN, for Mary Foil Russell, trustee.

Margaret B. Fugate, Esq., Johnson City, TN, for Carlton A. Jones, III.

### *MEMORANDUM*

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

In this adversary proceeding, the chapter 7 trustee seeks to avoid as preferential transfers and fraudulent conveyances pursuant to 11 U.S.C. §§ 547, 548 and 550, certain transfers by the debtor to or for the benefit of the defendant. Presently before the court are the parties' cross motions for partial summary judgment on whether the defendant may utilize the new value defense found in 11 U.S.C. § 547(c)(2). The defendant's motion also seeks summary judgment on whether the transfers by the debtor to creditors during the extended preference period can be recovered from the defendant because the guaranties signed by him waived his right

of recourse against the debtor and a state court has determined that one of the guaranties is unenforceable. As discussed below, the plaintiff's motion will be denied, and the defendant's motion will be granted in part and denied in part, the court having concluded that the defendant may utilize the new value defense but that his arguments regarding waiver or unenforceability of the guaranties signed by him are without merit. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(F) and (H).

I.

The debtor Pro Page Partners, LLC, a paging and wireless communication service business based in northeast Tennessee, filed for bankruptcy relief under chapter 11 on October 23, 2000, and as a debtor-in-possession, commenced the instant adversary proceeding against the defendant Carlton A. Jones, III on July 3, 2001. Subsequently on September 4, 2001, the chapter 11 bankruptcy case was converted to chapter 7. By agreed order entered November 1, 2001, Mary Foil Russell, the chapter 7 trustee, was substituted as party plaintiff for the debtor in this adversary proceeding.

As set forth in the complaint and admitted in the answer, the defendant is an insider of the debtor within the meaning of 11 U.S.C. §§ 101(31) because he holds a 30% membership or equity interest, owns and controls more than 20% of the outstanding voting securities of the debtor, and is an officer of the company. The plaintiff alleges that during the year prior to the debtor's bankruptcy filing, i.e., the extended preference period, the debtor made transfers totaling $13,100 to the defendant which are avoidable and recoverable as preferential transfers or alternatively, as fraudulent conveyances.

The plaintiff also alleges in the complaint that the defendant personally guaranteed the debtor's obligations to a number of its creditors, including Central Leasing, Inc. ("Central"), Kenesaw Leasing, Inc. ("Kenesaw"), and Thaxton Commercial Lending ("Thaxton"), and that the defendant obtained a loan from People's Community Bank upon which the debtor made the payments. According to the complaint, the debtor made payments totaling $123,146.21 to these creditors during the extended preference period; these payments benefitted the defendant by reducing his primary or contingent obligations to such creditors; and as such, these payments are avoidable and recoverable as preferential transfers or alternatively, as fraudulent conveyances.

In his answer to the complaint, the defendant raises certain affirmative defenses. The defendant contends that he extended new value within the meaning of 11 U.S.C. § 547(c)(4) in the form of loans totaling $140,500 to the debtor. With respect to the transfers to creditors allegedly on the defendant's behalf, the defendant similarly maintains that these creditors extended new value, that the transactions fall within the ordinary course of business exception of 11 U.S.C. § 547(c)(4), and that he is entitled to assert any defenses which would otherwise be available to these creditors in a preference or fraudulent conveyance action.

In her motion for partial summary judgment which is presently before the court, the plaintiff contends that the new value defense is unavailable to the defendant because he did not have an enforceable credit agreement with the debtor. The plaintiff also argues that any monetary advances by the defendant to the debtor should be recharacterized as capital contributions rather than loans and that capital contributions cannot constitute new value under § 547(c)(4) as a matter of law.

In response to these contentions, the defendant asserts that there is no dispute that the defendant transferred money to the debtor following the alleged preferential transfers and maintains that the lack of a written credit agreement does not preclude this money from constituting new value. The defendant also contends that the characterization of the monies transferred, whether they be capital contributions or loans, is irrelevant to the question of whether new value was extended. Accordingly, the defendant requests summary judgment in his favor on these issues.

With respect to the debtor's payments to Central, Kenesaw and Thaxton on obligations which the defendant had guaranteed, the defendant states that these transfers may not be avoided and recovered from him because he waived his right of recourse against the debtor in the guaranties. Additionally, regarding payments by the debtor to Thaxton, the defendant contends that these payments cannot be recovered from him because a Tennessee state court has held that the Thaxton guaranty is unenforceable. The defendant seeks judgment in his favor on both of these issues in his motion for partial summary judgment.

In her response to defendant's motion, the plaintiff denies that the defendant fully waived his right of recourse against the debtor in the guaranties although she concedes that if the right of recourse was waived, recovery from the defendant is unavailable under *Hendon v. Associates Commercial Corp. (In re Fastrans, Inc.)*, 142 B.R. 241 (Bankr.E.D.Tenn.1992). As for the Thaxton guaranty, the plaintiff asserts that the state court decision should not be given preclusive effect by this court,

or alternatively, that the state court wrongly decided the issue.

## II.

Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Fed. R. Bankr.P. 7056, mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir.1994). Denial of one party's summary judgment motion does not necessarily result in a corresponding conclusion that the opposite party is entitled to summary judgment. *See B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 593 (6th Cir.2001) ("When parties file cross-motions for summary judgments, 'the making of such contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist' ".).

## III.

▮▮▮ The court will first address the new value defense raised by the defendant. Pursuant to 11 U.S.C. § 547(c)(4), the trustee may not avoid a transfer:

to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

As articulated by the court in *Fitzpatrick v. Rockwood Water, Wastewater and Natural Gas Systems (In re Tennessee Valley Steel Corporation)*, 201 B.R. 927 (Bankr. E.D.Tenn.1996):

The purpose of § 547(c)(4) is "to encourage creditors to deal with troubled businesses in the hope of rehabilitation." *Kroh Bros. Dev. Co. v. Continental Constr. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.)*, 930 F.2d 648, 651 (8th Cir. 1991). As observed by the 11th Circuit, "a subsequent advance is excepted because a creditor who contributes new value in return for payments from the incipient bankrupt should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other creditors." *Charisma Inv. Co. v. Airport Sys., Inc. (In re Jet Fla. Sys., Inc.)*, 841 F.2d 1082, 1083 (11th Cir.1988)(per curiam). "Thus, the relevant inquiry under section 547(c)(4) is whether the new value replenishes the estate." *Kroh Bros.*, 930 F.2d at 652.

*Id.* at 939–40. *See also Erman v. Armco, Inc. (In re Formed Tubes, Inc.)*, 46 B.R. 645, 647 (Bankr.E.D.Mich.1985)(A creditor who subsequently advances to the estate new value in an amount equal to the preference "in effect returns the preference to the estate.").

For purposes of § 547, "new value" is defined by the Bankruptcy Code as:

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an

obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2).

■ The plaintiff contends that in order for a transfer to constitute new value within the meaning of this definition, the creditor must have an enforceable credit agreement with the debtor. The plaintiff states that she "recognizes that new value may take forms other than the extension of credit," but "if the new value is in the form of an extension of credit, then it must be pursuant to an enforceable credit agreement." Rejecting the defendant's assertion that any advance of money is sufficient to constitute new value, the plaintiff argues that "if new value could include advances in which the debtor had no obligation to repay, such as gifts or capital contributions, then the definition of 'new value' would essentially be rendered meaningless. In other words, the words 'goods, services or new credit' which qualify the words 'money or money's worth' . . . would have no purpose or meaning."

The court has been unable to locate any case law which addresses this precise issue and the plaintiff cites none, relying instead on a construction of the statute. Absent guidance from other courts, this court must appropriately turn to an examination of the statute itself. *See Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir.1995)("In all cases of statutory construction, the starting point is the language employed by Congress."). In this regard, the Sixth Circuit Court of Appeals has instructed:

"We read statutes and regulations with an eye to their straightforward and commonsense meanings." [Citation omitted.] We ascertain the plain meaning of a statute by reviewing "the particular statutory language at issue, as well as the language and design of the statute as a whole." [Citation omitted.] "When

we can discern an unambiguous and plain meaning from the language of a statute, our task is at an end." [Citation omitted.]

We may not, however, rely on the literal language of the statute where such reliance would lead to absurd results or an interpretation which is inconsistent with the intent of Congress. [Citations omitted.] Every word in the statute is presumed to have meaning, and we must give effect to all the words to avoid an interpretation which would render words superfluous or redundant.

*Walker v. Bain,* 257 F.3d 660, 666–67 (6th Cir.2001).

Reading § 547(a)(2) in a straightforward manner, the court simply finds no support for the plaintiff's interpretation of the new value definition. While it would be rare for a creditor to make a monetary gift to a debtor, nothing in the definition precludes a gift or any other transfer of money from constituting new value and providing a defense to a preference action, assuming the other requirements of § 547(c)(4) are met. *See Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 56 B.R. 339, 393 (Bankr.D.Minn. 1985)("Upon a plain reading of section § 547(a)(2) it cannot reasonably be disputed that, irrespective of the facts in this case, payments of money were clearly intended by Congress to constitute new value."). Contrary to the plaintiff's assertion, this conclusion does not render the words "goods, services, or new credit" meaningless. These words modify "money's worth" and serve to ensure that the "money's worth" is quantifiable and actually augments the bankruptcy estate.

Section 547(a)(2)'s legislative history does not suggest a contrary result. All it states is that the term "new value" is "defined in [its] ordinary sense[ ], but [is] defined to avoid any confusion or uncer-

tainty surrounding the term[ ]." H. REP. No. 95–595, 95th Cong., 1st Sess. 372 (1977); S. REP. No. 95–989, 95th Cong., 2d Sess. 87 (1978), 1978 U.S.C.C.A.N. 5873, 6328. The defendant's deposition in the present case indicates that the debtor used the monies advanced it by the defendant to pay ordinary, operating expenses. Regardless of whether these monetary advances were loans, charitable contributions or even gifts, they replenished the debtor's bankruptcy estate and thus constitute new value within the meaning of § 547(a)(2). Accordingly, plaintiff's motion for partial summary judgment will be denied.

■ With respect to whether the defendant is entitled to partial summary judgment on this issue, the defendant's motion is premised on whether "[t]he defendant can utilize the new value defense for transfers that he made to the debtor subsequent to transfers which may be found to be preferential as to him." While this court has concluded herein that the transfers by the defendant to the debtor may constitute new value, § 547(c)(4) has the additional requirements that the new value "not [be] secured by an otherwise unavoidable security interest" and that "the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor" on account of such new value. 11 U.S.C. § 547(c)(A) and (B). The court is unable to ascertain from the exhibits in this case whether the new value given by the defendant satisfies these requirements. Accordingly, the defendant's motion for partial summary judgment must be denied in this respect at this time.

## IV.

■ The defendant's second basis for partial summary judgment pertains to the payments by the debtor to Central, Kenesaw and Thaxton which the plaintiff seeks to recover from the defendant. The plaintiff maintains that since the defendant guaranteed the debtor's obligations to these creditors, the defendant benefitted from the payments because they reduced the defendant's potential liability on the guaranties. Furthermore, the courts have recognized that a guarantor of a debtor's obligations is a creditor of the debtor because he has a contingent claim against the debtor which will become fixed when he pays the creditor whose claim he has guaranteed or insured. *See Ray v. City Bank and Trust Co. (In re C–L Cartage Co.),* 899 F.2d 1490, 1494 (6th Cir.1990). *See also Covey v. Northwest Cmty. Bank (In re Helen Gallagher Enters., Inc.),* 126 B.R. 997, 1000 n. 3 (Bankr.C.D.Ill.1991)(citing legislative history to 11 U.S.C. § 101(10), the Bankruptcy Code provision defining "creditor"). Thus, based on this rationale, the plaintiff argues that the debtor's payments to Central, Kenesaw and Thaxton were "for the benefit of a creditor," i.e., the defendant, as required by § 547(b)(1), and are otherwise avoidable as a preference.

As a basis for his motion for partial summary judgment, the defendant contends that, notwithstanding his guaranty of the debtors' obligations, he does not have a claim or contingent claim against the debtor because he waived any right of recourse against the debtor in the guaranties signed by him. Under similar facts, some courts, including Bankruptcy Judge Richard Stair in *Fastrans,* have concluded that no preference exists because the insider is not a creditor and thus, the transfers could not have made "for the benefit of a creditor." *See Southmark Corp. v. Southmark Personal Storage, Inc. (Matter of Southmark Corp.),* 993 F.2d 117 (5th Cir.1993); *O'Neil v. Orix Credit Alliance, Inc. (In re Northeastern Contracting Co.),* 187 B.R. 420 (Bankr.D.Conn.1995); *Hostmann v. First Interstate Bank of Oregon, N.A. (In re*

*XTI Xonix Techs., Inc.)*, 156 B.R. 821 (Bankr.D.Or.1993); *In re Fastrans, Inc.*, 142 B.R. at 245. These courts have also held that there must be a nexus between the guaranty and the insider's status as a creditor. *Id.* As stated succinctly by Judge Stair:

> [I]t is not enough that an insider be a creditor of the debtor in a general sense; the insider must have a "claim" against the debtor attributable to the specific debt he or she guaranteed in order to render transfers made by the debtor on account of that debt to the non-insider transferee avoidable under § 547(b).

*In re Fastrans, Inc.*, 142 B.R. at 245.

In response to the defendant's motion on this issue, the plaintiff concedes that the guaranty signed by the defendant with respect to the Central obligation includes a full waiver of any claim that the defendant may have against the debtor and that under the holding of *Fastrans,* the defendant would not be a creditor for § 547(b) purposes. The plaintiff denies, however, that the Kenesaw and Thaxton guaranties waive any resulting claim of the defendant against the debtor. The court will examine the language of each of these guaranties.

The guaranty between the defendant and Central provides in pertinent part the following:

> If the undersigned is an insider of Lessee, as defined in 11 U.S.C. § 101, the undersigned irrevocably waives and agrees not to assert any claim he or she may have against Lessee, howsoever arising. Subject to the immediately preceding sentence, the undersigned agrees that he or she will have no claim against Lessee and no right of recourse to or with respect to any assets or property of Lessee until all Lessee's obligations to Lessor have been fully and finally paid and any applicable preference.

Although this provision is somewhat awkward, the court agrees with the parties that it provides for the full waiver of any claim the defendant has against the debtor in the event the defendant is an insider, which he admittedly is. Based on the waiver language, the plaintiff concedes in her memorandum of law that "[a]ssuming that [*Fastrans* ] is still good law; has not been overruled by the amendments to Bankruptcy Code § 550 in the Bankruptcy Reform Act of 1994; and is controlling in this case, . . . she will be unable to establish a 'claim' against the Debtor arising from the Central Leasing Guaranty," and "Defendant would be entitled to summary judgment with respect to the Debtor's transfers to Central set forth in the Complaint."

The plaintiff's "assumptions" regarding *Fastrans* are not entirely accurate. Granted, *Fastrans* was neither expressly nor implicitly overruled by the Bankruptcy Reform Act of 1994 which essentially overruled *Deprizio* and its progeny by preventing a § 550 recovery during the extended preference period from a noninsider transferee. *See Gordon v. Kelly (In re M2Direct, Inc.)*, 282 B.R. 60, 63 (Bankr.N.D.Ga. 2002) (discussing *Levit v. Ingersoll Rand Fin. Corp.,* 874 F.2d 1186 (7th Cir.1989)). *Fastrans* involved an interpretation of § 547(b) and "[n]othing in the language of § 550 limits recovery against insider creditors who benefit from voidable transfers to non-insiders." *Id.* at 63.

■ On the other hand, *Fastrans* is not "controlling in this case," *see In re Suburban Motor Freight,* 134 B.R. 617, 626 (Bankr.S.D.Ohio 1991)("The doctrine of *stare decisis* does not bind one bankruptcy court to follow the decision of another bankruptcy court, even if that decision is from another bankruptcy judge within the same district."); although this court does

find the decisions of the other bankruptcy jurists in this district to be highly persuasive. With regard to whether *Fastrans* "is still good law," the court notes that the decision was not appealed and its holding has been adopted by other courts. *See Matter of Southmark Corp.,* 993 F.2d at 120; *Brandt v. American Nat'l Bank and Trust Co. of Chicago (In re Foos),* 188 B.R. 239, 243 (Bankr.N.D.Ill.1995); *In re Northeastern Contracting Co.,* 187 B.R. at 423; *In re XTI Xonix Techs., Inc.,* 156 B.R. at 834 (all citing *Fastrans* with approval).

Nonetheless, *Fastrans'* nexus requirement along with the more general holding that an insider's waiver of his subrogation claim against the debtor precludes creditor status for preference purposes has attracted some criticism. Lenders seized on "waivers" as a solution to *Deprizio* and even though *Deprizio* has been remedied by the Bankruptcy Reform Act of 1994, lenders apparently still include waiver language in their guaranties as a means of protecting their indirect security, i.e., the insider-guarantors, from preference liability. *See* Jo Ann J. Brighton and Peter N. Tamposi, *Payments Benefitting Insider Guarantors Can Be Protected From Recovery By Artful Loan Drafting,* Am. Bankr. Inst. J. 10 (Oct.2001). Critics have argued that such waivers should be declared invalid because they serve no commercial function other than to insulate the insider in the event of a bankruptcy filing by the primary obligor. *See* Jay Lawrence Westbrook, *Two Thoughts About Insider Preferences,* 76 Minn. L. Rev. 73, 88 (1991). Furthermore, "[t]he waiver of subrogation does nothing to solve the policy issue that makes these payments objectionable under the Code. The insider still has every reason to try to use its influence to see that the guaranteed debt is paid in preference to the debtor's other obligations." Alvin L. Arnold, *Bankruptcy: Waiver of Subro-*

*gation Defeats Deprizio,* 22 Real Est. L. Rep. 4 (Dec.1992). "Indeed, the insider's motivation to cause the debtor to pay the guarantied creditor ahead of others is increased by a reimbursement waiver because payment by the debtor is the only way for the guarantor to avoid bearing the ultimate liability." Marshall E. Tracht, *Insider Guaranties in Bankruptcy: A Framework For Analysis,* 54 U. Miami L. Rev. 497, 542 (April 2000). *See also* Peter L. Borowitz, *Waiving Subrogation Rights and Conjuring Up Demons in Response to Deprizio,* 45 Bus. Law. 2151, 2156 (1990)(similarly asserting that a waiver of subrogation rights increases the incentive for the guarantor to prefer the creditor whose obligation he guarantied); David L. Katzen, *Deprizio and Bankruptcy Code Section 550: Extended Preference Exposure via Insider Guarantees, and Other Perils of Initial Transferee Liability,* 45 Bus. Law. 511, 530 (1990)(same).

In light of these concerns, the most recent court to address the issue has refused to recognize a waiver as a preclusion to preference liability. *See Telesphere Liquidating Trust v. Galesi (In re Telesphere Communications, Inc.),* 229 B.R. 173 (Bankr.N.D.Ill.1999). The court observed that in considering a prior motion, it had rejected the defendant's argument that a "Deprizio waiver" in the note prevented him from attaining the status of a "creditor" under § 547(b)(1). *Id.* at 176, n. 3. The court noted that it had determined:

> such a waiver has no economic impact—if the principal debtor pays the note, the insider guarantor would escape preference liability, but if the principal debtor does not pay the note, the insider could still obtain a claim against the debtor, simply by purchasing the lender's note rather than paying on the guarantee. Thus, the "Deprizio waiver" could only be seen as an effort to eliminate, by

contract, a provision of the Bankruptcy Code. The attempted waiver of subordination rights was thus held to be a sham provision, unenforceable as a matter of public policy.

*Id.* Accordingly, the court concluded that notwithstanding the waiver, the defendant was a creditor for purposes of § 547(b)(1). *Id. See also In re M2Direct, Inc.,* 282 B.R. at 64, n. 4 (citing the *Telesphere* decision but observing that the waiver issue had not been raised in the case before it).

This court is persuaded by the reasoning of the court in *Telesphere Communications.* The waiver in the Central guaranty was activated only if the guarantor was an insider "as defined in 11 U.S.C. § 101." Another statement in the waiver provision similarly stated that "[a]s used in this paragraph, the terms 'insider' and 'claim' are as defined in 11 U.S.C. § 101." Clearly, the use of Bankruptcy Code terminology and definitions in a commercial, nonbankruptcy setting was designed to posture the players in this transaction in such a way as to forestall any future preference exposure, whether on the part of Central or the defendant. As the court in *Telesphere Communications* reasoned, the guarantor-insider can easily override this waiver by purchasing the lender's note rather than paying it. In light of this ability, to conclude that the contractual waiver eliminates the defendant's creditor status and thus his preference liability would be to elevate form over substance in contravention of the policy considerations behind the preference provisions of the Bankruptcy Code. As stated by the Sixth Circuit Court of Appeals in the *C–L Cartage* decision,

Insiders, using their knowledge and control over the debtor, have an incentive to cause the debtor to prefer particular outside creditors when the insiders themselves derive benefits from those payments. In this case, the Fosters, using their knowledge and control over Cartage, had an incentive to prefer the bank throughout the extended preference period since every payment Cartage made reduced the Fosters' liability to the bank. Favoring certain creditors over others similarly situated is precisely what sections 547 and 550 seek to prevent. A straightforward application of the statutory language is consistent with the policies these sections were enacted to further.

*In re C–L Cartage Co.,* 899 F.2d at 1495. Accordingly, the defendant's motion for partial summary judgment, to the extent he alleges that no preference liability can exist because he waived any right of recourse against the debtor in the guaranties signed by him, will be denied.

The court's conclusion on this issue pertains not only to the Central guaranty but also to the Kenesaw and Thaxton guaranties as well so that it is not necessary for the court to resolve the parties' disagreement as to whether the Kenesaw and Thaxton guaranties effectively waived the defendant's subrogation claims against the debtor. Nonetheless, for completeness' sake, the court will address this issue.

The Kenesaw guaranty states:

Until all the covenants and conditions in the Lease of the Lessee's part to be performed and observed, and until all payments required by the Lease have been paid in full, Guarantor subordinates any liability and indebtedness of Lessee now or hereafter by Guarantor, secured or unsecured, to the obligations of Lessee, to Lessor under the lease.

Similarly, the Thaxton guaranty provides in pertinent part, "Until all indebtedness hereby guarantied has been paid in full, Guarantor(s) shall not have any right of subrogation unless expressly granted in writing by [Thaxton]." The plaintiff as-

serts that these provisions are subordination clauses rather than waiver clauses because rather than waiving any claim of the defendant against the debtor arising out of the Kenesaw and Thaxton guaranties, the provisions merely subordinates the debtor's obligations to the defendant to the claims of Kenesaw and Thaxton.

The court agrees with the plaintiff's analysis. This same issue was before the court in *Helen Gallagher Enterprises* wherein the guaranty read, "The undersigned shall have no right of subrogation whatsoever with respect to the liabilities or the collateral unless or until the lender shall have received full payments of all liabilities." *In re Helen Gallagher Enters., Inc.*, 126 B.R. at 1000. Because this language waived all right of subrogation until the underlying debt was paid in full and the debt remained unpaid as of the bankruptcy filing, the defendant therein argued that he was not a creditor. *Id.* Rejecting this assertion, the court stated:

> Merely because the Giamettes' right of subrogation was "postponed" does not deprive them of their status as creditors. A guarantor holds a contingent claim from the moment of the execution of the guaranty. [Citations omitted.] With respect to the typical guaranty, the contingency is the default of the primary obligor. [Citation omitted.] In the present case there is simply a further contingency—that being payment of the debt in full. Whether that right has ripened into a right of reimbursement as of the bankruptcy filing is not determinative. It is simply a question of timing.

*In re Helen Gallagher Enters., Inc.*, 126 B.R. at 1000–01.

Similarly, the guaranty under consideration in *Northeastern Contracting Co.* provided, "We shall have no right of subrogation ... unless and until all Security Obligations shall have been paid and performed in full." *In re Northeastern Contracting Co.*, 187 B.R. at 422. Citing the *Helen Gallagher Enterprises* decision, the court rejected the assertion that the guaranty language waived the insider-guarantor's subrogation rights, thus precluding him from being a creditor, finding instead that the guaranty merely delayed the right of subrogation until the non-insiders' obligations were paid in full. *Id.* at 423. The court also observed that the guaranty simply tracked the language of 11 U.S.C. § 509(c) which provides that a co-debtor's or guarantor's claim of subrogation, reimbursement or contribution is subordinated to the creditor's claim until the creditor's claim is paid in full. *Id.*

In the present case, the Kenesaw and Thaxton guaranties, like the guaranties in *Helen Gallagher Enterprises* and *Northeastern Contracting Co.*, did not waive the defendant's claims against the debtor. They simply delayed them further or imposed an additional contingency. As such, the guaranties did not operate to eliminate the defendant's creditor status.

One other issue raised by the defendant in this regard is that because the Kenesaw and Thaxton guaranties subordinated any claim of the defendant against the debtor to the debtor's obligations to these creditors and because these obligations were not paid as of to the bankruptcy filing, the defendant cannot now assert a claim against the debtor and thus is not a creditor. The defendant also cites 11 U.S.C. § 509 which similarly subrogates a guarantor's claim against the debtor until such time as the creditor has been paid. *See* 4 COLLIER ON BANKRUPTCY ¶ 509.04 ("[Section 509(c)] makes it clear that an entity asserting subrogation enjoys no participation in, or dividend from, the estate until the primary creditor is paid in full.").

The defendant's argument confuses ripeness of a claim with a claim's existence.

In *XTI Xonix Technologies Inc.*, the court concluded that a "right of subrogation constitutes a right to payment which is a 'claim' under § 101(5)," even though the claim is unmatured, unliquidated and contingent until payment of the principal's obligation in full. *In re XTI Xonix Techs., Inc.*, 156 B.R. at 828–29. Also, as quoted above from *Helen Gallagher Enterprises*, "Whether [the right of subrogation] has ripened into a right of reimbursement as of the bankruptcy filing is not determinative of [whether a claim exists]. It is simply a question of timing." *In re Helen Gallagher Enters., Inc.*, 126 B.R. at 1000–01. *See also Steege v. Affiliated Bank/North Shore Nat'l (In re Alper–Richman Furs, Ltd.)*, 147 B.R. 140, 155 n. 15 (Bankr.N.D.Ill.1992)(payment of the debt in full is simply a further contingency). The fact that the defendant's claim against the debtor is subject to the Kenesaw and Thaxton obligations being paid in full does not nullify the defendant's status as a creditor because he had a contingent claim as of the debtor's bankruptcy filing.

■ The last issue in this case is whether a state court's conclusion that the Thaxton guaranty is unenforceable against the defendant precludes preference liability in this court. In his motion for partial summary judgment, the defendant states that because he prevailed when Thaxton sued him in the Washington County (Tennessee) Law Court to recover on the guaranty, "the payments to Thaxton Commercial Lending did not benefit [him] since he was not a creditor in regard to those transactions." In support of this assertion, the defendant has submitted a certified copy of the "Order Granting Summary Judgment" entered June 7, 2002, by the state court chancellor in *Thaxton Commercial Lending, Inc. v. Carleton A. Jones*, No. 20981. The order recites, *inter alia*, that "Thaxton impaired the collateral

securing the obligation of Pro–Page Partners, LLC by failing to properly perfect a security interest in the accounts receivable of Pro Page"; that "Thaxton impaired the collateral by failing to take control of the purchased accounts in accordance with Paragraph 3.2 of the agreement and its subparts"; and that "[i]f Thaxton had either properly purchased the accounts or perfected a security interest in accounts receivable, its claim would have been paid in full." Accordingly, the court concluded that the defendant was entitled to judgment as a matter of law because "his liability has been discharged pursuant to T.C.A. § 47–3–605(f) and (g)." In general terms, Tenn. Code Ann. § 47–3–605(f) provides that if an obligation of a party is secured by collateral and a party entitled to enforce the instrument impairs that collateral, a co-obligor on the debt is discharged to the extent the impairment causes him to pay more than he otherwise would have been obligated to pay. Subsection (g) of § 47–3–605 defines the ways that collateral may be impaired and includes failure to obtain or maintain perfection and failure to perform a duty to preserve the value of collateral.

In response to the defendant's argument on this issue, the plaintiff contends that collateral estoppel does not bar her from relitigating the issue of whether the defendant benefitted from the payments by the debtor to Thaxton. She notes that under Tennessee law in order for collateral estoppel to apply, the parties must be in privy and the issue sought to be precluded must be identical in both cases. According to the plaintiff, neither of these requirements is met in this adversary proceeding because she was not a party to the state court action and because the issues involved are dissimilar: "[i]n the State Court Case, the issue was apparently whether the Defendant was discharged from his guaranty obligation to Thaxton while the

issue here is whether the Defendant benefited from the transfers at issue."

 The court agrees with the plaintiff in both respects. When a federal court is asked to adhere to a previous state court judgment, the federal court must give the state court judgment the same preclusive effect as that judgment would be given under the law of the state where the judgment was rendered. *Hinchman v. Moore,* 312 F.3d 198, 202 (6th Cir.2002). Under Tennessee law, "[c]ollateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit." *Roy v. Diamond,* 16 S.W.3d 783, 786 (Tenn.App.2000). Stated differently, "[a] party defending on the basis of res judicata or collateral estoppel must demonstrate that: 1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues." *Id.* at 787.

 When this test is applied to the instant case, the defendant's assertion regarding the binding effect of the state court action must fail. The plaintiff in this case, the chapter 7 trustee, was not a party to the state court action nor was she in privity with Thaxton, the plaintiff therein. "Privity has been defined as 'a mutual or successive relationship to the same rights of property constituting the subject matter of the litigation.'" *Leathers v. U.S.A. Trucking, Inc.,* 1992 WL 37146, *2 (Tenn.App. March 2, 1992) (quoting 50 C.J.S. *Judgments* § 788). In pursuing this adversary proceeding, the chapter 7 trustee is a representative of all of the creditors of the bankruptcy estate, not merely a successor to the interests of the debtor or a representative of a single creditor. *See Williams v. Marlar (In re Mar-*

*lar),* 267 F.3d 749, 754 (8th Cir.2001)(trustee, suing on behalf of creditor class as whole to set aside debtor's conveyance to son as fraudulent transfer under Arkansas law, was not in privity with debtor's ex-wife, who had unsuccessfully sought to challenge transfer on same grounds); *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 706 (6th Cir.1999) (preclusion principles did not bar trustee's action against debtor's former wife for the avoidance of certain prepetition transfers made by debtor to his former wife in divorce proceeding because trustee and the debtor were not in privity)(citing, *inter alia, Coleman v. Alcock,* 272 F.2d 618, 621–22 (5th Cir.1959)("Because the trustee is invested with 'extraordinary rights as a general representative of creditors,' he is 'not bound, either on res judicata or judicial collateral estoppel grounds by the prior state proceedings.'") and *Boyajian v. De-Fusco (In re Giorgio),* 62 B.R. 853, 863 (Bankr.D.R.I.1986)("Operation of res judicata requires identity of parties. Yet the creditors presently represented by the trustee were not parties to the original action, nor were their interests represented therein. Thus, they cannot be bound by the dismissal of the action.")).

 Second, the Washington County suit and the matter pending before this court concern different issues and causes of action. The Washington County suit was an action to enforce a guaranty obligation of the defendant, while this case is an action by a trustee to have certain transfers deemed preferential. The fact that a court concluded in June 2002 that the defendant's obligations under the guaranty were discharged as a matter of law due to the actions or omissions of Thaxton is not determinative of whether the payments by the debtor to Thaxton during the year before the debtor's bankruptcy filing on October 23, 2000, benefitted the defen-

dant or whether Thaxton was a creditor at that time. "Whether a transfer is for the benefit of a creditor is determined at the time of the transfer." *Clark v. Balcor Real Estate Finance (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1555–56 (10th Cir.1993). At the time of the payments by the debtor to Thaxton, the guaranty by the defendant was still in existence and no determination had been made that the defendant's liability thereunder had been discharged.

In *Meridith Hoffman Partners*, the insiders argued that they "did not benefit from a reduction in potential liability because they were insolvent and soon to enter bankruptcy themselves, so they would never have had to pay on their guaranties anyway." *Id.* at 1555. The court rejected this assertion, noting that the insiders were still liable on their guaranties at the time of the transfer. *Id.* at 1556. In discussing benefit for purposes of § 547(b)(5), the court stated that "[i]f the debtor favored a certain creditor because it reduced an insider's exposure, it would not matter whether the insider guarantor ultimately did not have to pay on the guaranty. The debtor still spent money that would have been part of the estate and available for fair distribution to all creditors." *Id.*

### V.

An order will be entered in accordance with the foregoing.