GRABER, Circuit Judge,
dissenting:
I respectfully dissent. The majority’s conclusion that Arnold Simon is not a “creditor” for purposes of the Bankruptcy Code is wrong for two independent reasons. First, I would follow every bankruptcy court to have decided the issue and hold that insider-guarantors such as Simon are “creditors.” The majority errs by looking to extraneous facts to decide whether the waiver is valid. Second, even if we were to look to additional facts, the majority’s analysis depends heavily on a “fact” that the bankruptcy court expressly declined to find.
A. Insiders and the Right to Indemnity
As its president and CEO, Simon is an insider of Adamson Apparel, Inc. Adamson took out a loan from CIT Group Commercial Services, Inc. Simon personally guaranteed the loan. Adamson made a partial payment of about $5 million on the loan in December 2003. In September 2004, Adamson filed for bankruptcy.
Title 11 U.S.C. § 547(b) authorizes the bankruptcy trustee to avoid certain pre-filing transfers: all transfers made in the 90-day period before filing and all transfers made for the benefit of a “creditor” in the one-year period before filing. Because the December 2003 partial payment occurred less than a year before filing but more than 90 days before filing, the trustee’s ability to avoid the transfer turns on whether Simon was a “creditor” of Adam-son in December 2003.
Every bankruptcy court to have addressed this issue since the important 1994 amendments to the Bankruptcy Code have agreed: insider-guarantors such as Simon are “creditors” for purposes of the Code even if they nominally have waived their right to indemnity. Miller v. Greystone Bus. Credit II, L.L.C. (In re USA Detergents, Inc.), 418 B.R. 533, 542 (Bankr. D.Del.2009); Russell v. Jones (In re Pro Page Partners, LLC), 292 B.R. 622, 630-31 (Bankr.E.D.Tenn.2003); Telesphere Liquidating Trust v. Galesi (In re Telesphere Commc’ns, Inc.), 229 B.R. 173, 176 n. 3 (Bankr.N.D.Ill.1999).[1] The courts’ reasoning is important:
[S]uch a waiver has no economic impact — if the principal debtor pays the note, the insider guarantor would escape preference liability, but if the principal debtor does not pay the note, the insider could still obtain a claim against the debtor, simply by purchasing the lender’s note rather than paying on the guarantee. Thus, the [waiver] could only be seen as an effort to eliminate, by contract, a provision of the Bankruptcy *1023 Code. The attempted waiver of subordination rights was thus held to be a sham provision, unenforceable as a matter of public policy.
Telesphere, 229 B.R. at 177 n. 3; see USA Detergents, 418 B.R. at 542 (quoting and agreeing with that text from Telesphere); Pro Page, 292 B.R. at 630-31 (same).
The majority opinion generally agrees with the quoted analysis. But the majority opinion then goes a step further — looking at additional facts in an open-ended inquiry into whether the waiver was a “sham.” Maj. op. at 1291-96. I disagree with that approach, which is not supported by precedent or by the logic of what Congress tried to accomplish. The waivers are invalid for purposes of the Bankruptcy Code because they attempt to defeat the one-year look-back period via contract, even though the waivers have no real-world economic, impact. The majority opinion searches for clues as to whether Simon actually planned to purchase the note, but that inquiry is irrelevant. Because Simon easily could have purchased the note as of December 2003, the waiver had no real-world effect other than to defeat the Bankruptcy Code’s longer look-back period for insiders. Therefore, Simon was a creditor.
I would follow the unanimous view of the bankruptcy courts that have ruled on this issue and would hold that an insider-guarantor is a “creditor” for purposes of the Bankruptcy Code.
B. Reliance on a New Fact
The majority opinion’s primary reasoning is that, because Simon later paid $3.5 million toward the Adamson-CIT loan with his personal funds and did not file a bankruptcy claim against Adamson, we should be less worried that Simon’s waiver of indemnification rights was a sham. As explained above, I disagree as a matter of law that those facts are relevant. But even if we must consider additional facts, the majority opinion errs by considering a “fact” that the bankruptcy court expressly declined to find.
No one disputes that, in March 2004, Simon paid CIT about $3.5 million. But the reason for that payment was hotly disputed before the bankruptcy court. Simon asserted that .the payment was in satisfaction of the Adamson-CIT loan. Plaintiff strongly disagreed and presented evidence that the payment was to satisfy a personal debt, owed by Simon to CIT, that had nothing whatsoever to do with Adam-son. For our purposes, if the $3.5 million payment was made only to satisfy a personal debt, then that payment does not demonstrate anything with respect to whether the waiver on the Adamson-CIT loan was a “sham.” '
Everyone agrees that the bankruptcy court declined to reach this factual question. In effect, the majority decides a disputed issue of fact. But “[tjrial courts find facts. We do not.” Fisher v. Roe, 263 F.3d 906, 912 (9th Cir.2001), overruled in other part by Payton v. Woodford, 346 F.3d 1204, 1217 n. 18 (9th Cir.2003) (en banc).
Making that factual finding is all the more egregious because the record strongly (if not conclusively) suggests that the $3.5 million payment was not on Adam-son’s behalf but was for a personal debt that Simon had acquired with respect to a different transaction and company (Gru-po). In Simon’s favor is Simon’s own self-serving testimony. In Plaintiffs favor is proffered evidence that included:
• Financial statements by CIT in early 2004 showing (1) that no credit of $3.5 million appeared and (2) that, as of March 15, 2004 — before the $3.5 million *1024 payment — Adamson owed CIT less than $200,000.
• A separate note, which nowhere references Adamson and is a personal note: “FOR VALUE RECEIVED, ARNOLD H. SIMON, an individual (the “Debtor”), hereby unconditionally promises to pay on demand to the order of THE CIT GROUP ... $3,379,630.00....”
• A letter dated January 7, 2003, that describes the loan to Simon as “your personal loan from CIT.”
• A letter from CIT that describes the loan as “the personal note to us dated November 5, 2002 with an approximate amount of $3[.]455 M,” which included interest on the principal amount.
• A draft settlement agreement in late 2004 that states: “On or about November 5, 2002, CIT made a personal loan to Simon in the amount of $3,379,630 for which Simon executed a Demand Promissory Note ... in favor of CIT in said amount.”
• An email in late 2004 that describes the loan in similar terms.
The majority opinion attempts to justify its appellate factual finding in two ways. First, it asserts that, because the personal debt arose as part of the “Grupo transaction,” and because Adamson assumed some of Grupo’s liabilities, “[t]he Grupo transaction was thus simply a subset of Adam-son’s indebtedness to CIT.” Maj. op. at 1295. The bankruptcy court never made factual findings on these points, so the majority opinion attempts to justify one improper factual finding by making others. Moreover, whether Adamson assumed certain liabilities to CIT is wholly irrelevant to the question of the nature of the debt between Simon and CIT. As noted above and as evidenced by the note itself and by other documents from 2002 and 2003, the debt in question was a personal one, owed by Simon in his individual capacity. Accordingly, when Simon paid that personal debt, it was for his own benefit, not Adam-son’s.
Second, the majority opinion asserts that Plaintiffs lawyer “acknowledged at oral argument that ... Simon personally paid CIT over $3.5 million to clear Adam-son’s debt.” Maj. op. at 1294. Such an acknowledgment would be a startling concession given that the issue was disputed vigorously before the bankruptcy court. Unfortunately for the majority opinion, the transcript of oral argument reveals no such concession.
After oral argument, we ordered supplemental briefing on the effect of the following exchange:
JUDGE GILMAN: I’ve just got one question. I want to know, was the debt to CIT fully paid off on December 18, 2003, when the BP Clothing amount was roughly five million was in fact diverted to ...
ATTORNEY HUNTER: No, I think it was fully paid off on March 31st when it took the ... uh ... March 2004, when it got the amounts from the cash collateral accounts.
•That statement cannot be considered a concession on the question of the reason for the March 2004 payment. Judge Gil-man asked whether the debt was fully paid in December 2003, and the lawyer answered “no.” In context, the question concerned timing, not the reason for the 2004 payment. Moreover, the lawyer stated only that “I think” that the debt was satisfied by the March 2004 payment. (Emphasis added.) In the supplemental briefing, the lawyer explained that, after reviewing the record, his statement at oral argument had been incorrect.
We of course have held that a “judicial admission is binding” when a party “clearly and expressly conceded [an issue] on *1025 appeal, both in briefing and at oral argument.” United States v. Crawford, 372 F.3d 1048, 1055 (9th Cir.2004) (en banc). And as the majority opinion properly notes, an unambiguous concession at oral argument can be binding. Maj. op. at 1294. But the majority opinion improperly extends that principle to a statement at oral argument that starts with the equivocal phrase “I think,” on a topic different from the topic of the question posed, on a matter that was litigated extensively before the trial court, and as to which the purported concession later was renounced in a supplemental brief. See Jonibach Mgmt. Trust v. Wartburg Enters., Inc., 750 F.3d 486, 491 n. 2 (5th Cir.2014) (“To qualify as a judicial admission, the statement must be ... deliberate, clear, and unequivocal....” (internal quotation marks omitted)); Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859-60 (9th Cir.1995) (holding that a judicial admission may be retracted). Not only is there no support for the majority opinion’s incredibly strict application of the judicial admissions doctrine, we do ourselves and the litigants a great disservice if lawyers must be constantly wary that a mistaken guess about the content of the factual record, intended to aid the court, will be held against their clients conclusively.
I would reverse the bankruptcy court’s holding that Simon was not a “creditor” and would remand for further proceedings. Accordingly, I dissent.

. The bankruptcy courts that decided the issue before the 1994 amendments all addressed the inequitable situation that Congress fixed in 1994 — allowing a trustee to seek the funds from the lender. As the majority correctly recognizes, those cases plainly do not apply here, where the trustee seeks the funds from the insider.