# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2014

Lyle W. Cayce
Clerk

No. 13-20308

JONIBACH MANAGEMENT TRUST,

Plaintiff–Appellee,

v.

WARTBURG ENTERPRISES, INC.,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, DENNIS, Circuit Judge, and GILSTRAP, District Judge.[*]

CARL E. STEWART, Chief Judge:

This appeal arises from the district court's grant of summary judgment for Plaintiff–Appellee Jonibach Management Trust, trading as Bumbo International Trust ("Bumbo"), on counterclaims by Wartburg Enterprises, Inc. ("Wartburg") alleging breach of contract. For the reasons herein, we affirm in part and reverse in part.

---

[*] District Judge for the Eastern District of Texas, sitting by designation.

No. 13-20308

## I.

From 2003 to 2010, South African company Bumbo sold plastic baby seats to a United States distributor, Wartburg, which in turn supplied them to retailers including Wal-Mart, Toys "R" Us, and Babies "R" Us. There was never any written contract between the parties. Eventually, the parties' relationship soured. Although the circumstances surrounding this deterioration are not crystal clear, Wartburg's inability to pay for merchandise in a timely manner and Bumbo's decision to enter into an agreement with another distributor were factors.

On February 25, 2010, Bumbo filed a complaint against Wartburg seeking specific performance of an oral distribution agreement between the companies. Bumbo also sought a temporary restraining order ("TRO") and preliminary injunction requiring Wartburg to distribute Bumbo's baby seats to three retailers: Walmart, Toys "R" Us, and Babies "R" Us. Bumbo asserted that Wartburg was refusing to distribute goods Bumbo had delivered, but for which Wartburg had not yet paid, to the retailers for whom the goods were intended. According to Bumbo, this refusal was in retaliation for Bumbo's decision to retain a different distributor. The district court granted the temporary injunction, finding that "Bumbo and Wartburg had a clear course of dealing over several years that strongly suggests an enforceable oral distribution agreement."

Soon thereafter, Wartburg filed counterclaims against Bumbo for breach of contract, fraud, and quantum meruit. On February 16, 2011, the district court dismissed with prejudice all of Bumbo's claims and lifted the temporary injunction against Wartburg. The next day, the district court granted Bumbo's motion to dismiss Wartburg's fraud and quantum meruit counterclaims, leaving only Wartburg's counterclaims for breach of contract.

2

No. 13-20308

These breach of contract counterclaims are the only claims at issue in this appeal.  In these counterclaims, Wartburg alleges that Bumbo breached the parties' agreement in three ways.  First, Wartburg claims Bumbo breached their contract by "refusing to sell and/or provide its products to Wartburg for sale to Wartburg's customers" ("refusal of sale claim").  Wartburg further accuses Bumbo of breaching by "taking over Wartburg's customer relationships" ("customer relationships claim").  These two claims stem in part from the recall by the Consumer Products Safety Commission of Bumbo's baby seat in 2007, during which time Bumbo allegedly offered Wartburg exclusive distributorship rights in the United States in exchange for serving as Bumbo's representative during the recall and handling product issues in the United States with regard to Toys "R" Us, Babies "R" Us, Wal-Mart, and Target.

Lastly—and most importantly for this appeal—Wartburg alleges that Bumbo committed a breach by "demand[ing] that Wartburg only sell its inventory to certain retailers, e.g., WalMart, Toys "R" Us, and Babies "R" Us" ("retailer limitation claim").  The parties dispute whether this claim arises out of the exclusive distributorship agreement at issue in the refusal of products claim and the customer relationships claim, or out of the initial contract on which Bumbo's preliminary injunction was based.

Bumbo moved for summary judgment on these counterclaims, which the district court granted.  The district court explained that all three contract claims arose "not as a result of any initial oral agreement between the parties, but out of an alleged later oral modification or agreement under which Bumbo granted Wartburg *exclusive* rights to distribute Bumbo seats in the United States."  Wartburg had introduced no evidence of a written agreement to any modification.  The district court determined that, therefore, summary

3

judgment was appropriate because the alleged modification was barred by the statute of frauds.

Wartburg thereafter made a motion for new trial under Federal Rule of Civil Procedure 59. It argued that the district court's dismissal of its contract counterclaims on statute of frauds grounds was at odds with the court's earlier grant of injunctive relief to Bumbo. Specifically, Wartburg argued that in granting the preliminary injunction to Bumbo against Wartburg, the district court found that Bumbo and Wartburg had an enforceable oral distributorship agreement. The district court denied the motion for a new trial, reiterating that the initial oral agreement was distinct from the later, unproven oral modification on which Wartburg's counterclaims were based. It further explained that the injunction order concerned goods that had already been delivered by Bumbo and accepted by Wartburg and thus were not subject to the statute of frauds. *See* Tex. Bus. & Com. Code Ann. § 2.201(c)(3). Wartburg timely appealed the summary judgment.

## II.

We review summary judgment de novo, applying the same standards as the district court. *Antoine v. First Student Inc.*, 713 F.3d 824, 830 (5th Cir. 2013); *see also* Fed. R. Civ. P. 56(a) ("[Summary judgment is proper] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). There is no genuine issue of material fact "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party." *Deidol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011) (citing *Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 247 (5th Cir. 2009)).

Under Texas law, "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate

that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. . . ." Tex. Bus. & Com. Code Ann. § 2.201(a); *see also Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 469 (5th Cir. 2002).[1]   However, "[a] contract which does not satisfy the [the writing] requirements of Subsection (a) but which is valid in other respects is enforceable. . . with respect to goods for which payment has been made and accepted or which have been received and accepted." Tex. Bus. & Com. Code Ann. § 2.201(c)(3).   Furthermore, an unwritten contract is enforceable "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made."  *Id.* at § 2.201(c)(2). In such a situation, "the contract is not enforceable . . . beyond the quantity of goods admitted."  *Id.*

As explained above, this appeal concerns the district court's grant of summary judgment for Bumbo on three counterclaims alleging breach of contract: the refusal of sale claim, the customer relationships claim, and the retailer limitation claim.  Wartburg contends that the district court erred by determining that these counterclaims stemmed not from the original oral contract at issue in the earlier preliminary injunction—which the district court indicated was enforceable based on a clear course of dealing over several years—but from a later, unproven oral modification to the initial oral agreement.  According to Wartburg, the district court reached this conclusion by mistakenly focusing only on the two counterclaims alleging Bumbo breached the exclusivity portion of the agreement—the refusal of sale claim and the customer relationships claim.  Wartburg contends that the district

---

[1] Because the district court exercised diversity jurisdiction over this dispute, we apply the substantive law of Texas.  *See City of New Orleans v. BellSouth Telecomms., Inc.*, 690 F.3d 312, 322 (5th Cir. 2012).

court ignored its retailer limitation claim, which asserted that Bumbo's insistence that Wartburg supply only certain retailers—in part through the preliminary injunction—constituted a breach.

Wartburg insists that the retailer limitation claim is based on the same contract at issue at the preliminary injunction phase. Therefore, Wartburg argues that just as the statute of frauds did not bar Bumbo from suing to enforce an oral contract allegedly requiring Wartburg to distribute product solely to three retailers, it likewise does not bar Wartburg from counterclaiming that the same contract contained no such limitation. Furthermore, even if the statute of frauds otherwise applies, Wartburg argues that Bumbo was estopped from denying the existence of an enforceable oral distributorship agreement based on its numerous representations to the contrary. Specifically, Wartburg contends that the doctrines of judicial estoppal, judicial admission, and quasi-estoppal bar Bumbo's statute of frauds defense.

The district court was correct that the refusal of sale claim and the customer relationships claim are rooted in a later oral modification relating to exclusive distribution. There was no written evidence of this modification to the original contract. The modification does not fall into any of the exceptions to the statute of frauds. Nor did Bumbo make any sworn statements or judicial admissions relating to this modification; it never took the position that there was such a modification. As such, this oral modification is not enforceable under Texas's statute of frauds. The district court correctly granted summary judgment to Bumbo as to the refusal of sale claim and the customer relationships claim.

Therefore, the only question for us to resolve is whether the district court erred in granting summary judgment on Wartburg's retailer limitation claim.

We agree with Wartburg that this claim is based not on the modification, but on the initial contract. This is apparent on the face of the counterclaims and in the exhibits attached to the response to Bumbo's motion for summary judgment. As stated above, Wartburg's retailer limitation claim alleged that Bumbo committed a breach by "demand[ing] that Wartburg only sell its inventory to Walmart, Toys "R" Us, and Babies "R" Us." Meanwhile, Bumbo's motion for a TRO and preliminary injunction asserted that Wartburg breached its distributorship agreement with Bumbo by refusing to distribute to Wal-Mart, Toys "R" Us, and Babies "R" Us. It asked for a TRO "preventing Wartburg from selling or otherwise disposing of the Bumbo products to anyone other than Wal-Mart, Toys "R" Us, and Babies "R" Us" and a preliminary injunction "mandating that Wartburg distribute the Bumbo products it has in stock to Wal-Mart and Toys "R" Us, as it is supposed to." Wartburg's claim alleging that the parties *did not* agree that it must supply these retailers is clearly rooted in the same contract as Bumbo's earlier claim that they *did* agree to this limitation. Accordingly, Wartburg's retailer limitation claim stems from the initial oral contract.

Moreover, the exhibits to Wartburg's response to Bumbo's motion for summary judgment make clear that Wartburg's retailer limitation claim arises from the same contract at issue in the preliminary injunction phase. For example, Wartburg's second exhibit, a transcript of the deposition of Wartburg Vice President Mark Buchanan, contains the following text:

> Q: The second breach outlined by Wartburg in their [] first amended counterclaim states, "Bumbo demanded that Wartburg only sell its inventory to certain retailers, Wal-Mart, Toys "R" Us and Babies "R" Us, to the exclusion of Wartburg's other customers." . . . Is that associated with a motion for injunction that was filed by Bumbo requesting the Court to require Wartburg to deliver to Wal-Mart, Toys "R" Us and Babies "R" Us?

A. Yes.

Q. Does that refer to any other time frame or is it just that particular instance?

A. Referring to that instance.

To achieve a preliminary injunction, Bumbo had to show, *inter alia*, there was a substantial likelihood it would prevail on the merits. *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 363 (5th Cir. 2003). However, this did not amount to a ruling on the merits. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* Thus, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.*; *see also Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 122 n.3 (5th Cir. 1993). As such, the district court's finding during the preliminary injunction phase of the proceeding that the contract contained a limitation on which retailers Wartburg could supply may be challenged at a later stage of the proceedings.

The initial oral agreement on which Wartburg bases its retailer limitation claim is not invalidated by the statute of frauds. The record shows that Bumbo repeatedly asserted that there was an initial contract.[2]

---

[2] Bumbo's pleadings and testimony regarding the initial contract also constitute judicial admissions. "To qualify as a judicial admission, the statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (citing *Griffin v. Superior Ins. Co.*, 338 S.W.2d

Accordingly, this contract falls under one of the exceptions to the Texas statute of frauds: A contract otherwise barred by the statute is enforceable "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made." *See* Tex. Bus. & Com. Code Ann. § 2.201(c)(2). As per the exception, it is not enforceable "beyond the quantity of goods admitted"—that is, there is an enforceable contract between the two parties only as to the goods that were the subject of the preliminary injunction. *See id.*

In sum, we hold that Wartburg's retailer limitation claim, regarding Bumbo's insistence that Wartburg supply Wartburg's inventory of Bumbo products solely to Wal-Mart, Toys "R" Us, and Babies "R" Us, arises from the initial, admitted-to contract. As such, this claim falls under one of the exceptions to Texas's statute of frauds. Therefore, the district court erred in granting summary judgment to Bumbo as to this claim on statute of frauds grounds. We remand this claim to the district court for a determination as to whether there is any genuine issue of material fact.

### III.

For the foregoing reasons, we AFFIRM IN PART and REVERSE IN PART the district court's grant of summary judgment. We REMAND to the district court for further proceedings consistent with this opinion.

---

415, 419 (Tex. 1960)). All of these factors are met with regard to the existence of an enforceable initial contract; Bumbo did not, however, admit to any later modifications.